# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

SHAWN WOODWARD,

Plaintiff,

- v -                                           Civ. No. 9:13-CV-1304
                                                        (LEK/RFT)

DR. ALI, *Muslim Chaplain; Coxsackie Correctional
Facility*; DANIEL F. MARTUSCELLO, *Superintendent
Coxsackie Correctional Facility*; LAW, *C.O.*; CO BALDWIN;
and STEVENSON, *C.O.*,

Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

SHAWN WOODWARD
Plaintiff, *Pro Se*
00-A-6563
Cape Vincent Correctional Facility
Rte. 12E
P.O. Box 739
Cape Vincent, New York 13618

HON. ERIC T. SCHNEIDERMAN                     JOSHUA E. McMAHON, ESQ.
Attorney General of the State of New York     COLLEEN D. GALLIGAN, ESQ.
Attorney for Defendants                       Assistant Attorney Generals
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Shawn Woodward brings this action, pursuant to 42 U.S.C. § 1983, alleging

that Defendants violated his constitutional rights while he was incarcerated at Coxsackie

Correctional Facility.  Presently before the Court are Plaintiff's Motions for Partial Summary

Judgment seeking judgment, as a matter of law, against Defendants Ali, Martuscello, Baldwin, and

Stevenson.[1]  Dkt. Nos. 49 & 60, Pl.'s Mots. for Partial Summ. J.; *see also* Dkt. No. 43, 2d Am. Compl.  For the reasons that follow, we recommend that Plaintiff's Motions for Partial Summary Judgment be **DENIED**.

## I.  PROCEDURAL HISTORY

Plaintiff initiated this action in October 2013 with the filing of a Complaint.  Dkt. No. 1, Compl.  In December 2013, Plaintiff amended his Complaint as of right.[2]  Dkt. No. 10, Am. Compl.  Upon initial screening, Plaintiff's Amended Complaint was accepted for filing and service was directed upon the remaining Defendants.  Dkt. No. 18, Dec. & Order.  On May 29, 2014, Plaintiff sought leave to amend, Dkt. No. 22, Lt.-Mot.. and on December 2, 2014, by Decision and Order, the Court granted Plaintiff's Motion and directed Defendants to respond to the Second Amended Complaint.  Dkt. No. 42, Dec. & Order; *see also* Dkt. No. 43, Second Am. Compl.

On December 29, 2014, Defendants answered the Second Amended Complaint.  Dkt. No. 45, Ans.  And, on December 30, 2014, a Mandatory Pretrial Discovery and Scheduling Order was issued by this Court wherein we directed the parties to complete discovery on or before June 30, 2015, and to file dispositive motions by August 30, 2015.  Dkt. No. 46.

On February 2, 2015, Plaintiff filed a Motion for Partial Summary Judgment seeking judgment against Defendants Ali and Martuscello for violations of his First, Eighth and Fourteenth Amendment rights as well as rights protected by the Religious Land Use and Institutionalized

---

[1] Plaintiff has not moved for summary judgment on his excessive force claim against Defendant Law.

[2] Shortly thereafter, Plaintiff filed a Second Amended Complaint, however, at his request, it was stricken from the Docket.  Dkt. Nos. 11, 12, & 16.

Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Dkt. No. 49, Pl.'s Mot. for Partial Summ. J.[3]

On March 23, 2015, Plaintiff filed a Second Motion for Partial Summary Judgment seeking judgment against Defendants Baldwin and Stevenson for violations of Plaintiff's First and Fourteenth Amendment rights. Dkt. No. 60, Pl.'s Mot. for Partial Summ. J.[4] On March 31, 2015, Defendants filed a Letter in opposition to Plaintiff's Motions. Dkt. No. 64, Defs.' Resp.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for

---

[3] Plaintiff's Motion for Partial Summary Judgment against Defendants Ali and Martuscello consists of the following:
  1) Notice of Motion, Dkt. No. 49;
  2) Shawn Woodward Affidavit, dated January 27, 2015, and Memorandum of Law, Dkt. No. 49-1;
  3) Memorandum of Law Table of Contents (Authorities), Dkt. No. 49-2;
  4) Statement of Material Facts Pursuant to Local Rule 7.1(a)(3); Dkt. No. 49-3;
  5) Exhibits/Attachments 1-2, Dkt. No. 49-4; and
  6) Affidavit of Service, Dkt. No. 49-5.

[4] Plaintiff's Motion for Partial Summary Judgment against Defendants Baldwin and Stevenson consists of the following:
  1) Notice of Motion, Dkt. No. 60;
  2) Shawn Woodward Affidavit, dated April 17, 2015, Dkt. No. 60-1;
  3) Statement of Material Facts Pursuant to Local Rule 7.1(a)(3); Dkt. No. 60-2;
  4) Memorandum of Law, Dkt. No. 60-3;
  5) Exhibits/Attachments 1-6, Dkt. No. 60-4; and
  6) Cover Letter/Affidavit of Service, Dkt. No. 60-5.

trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."" *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Pursuant to this District's Local Rules of Practice,

> [a]ny motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

N.D.N.Y.L.R. 7.1(a)(3).

Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may accept the unopposed statement of facts submitted by the movant only if the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that a court's failure to verify in the record the assertions set forth in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"). Summary judgment may not be granted, however, solely because a non-movant failed to oppose the motion. *See Fabrikant v. French*, 691 F.3d 193, 215 n.18 (2d Cir. 2012); *Vt. Teddy Bear Co. v. 1-800Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The court must still determine whether the movant satisfied his burden of production: it must ensure that the evidence upon which the movant relies supports the facts asserted; confirm that the facts entitle the moving party to judgment as a matter of law; and set forth its reasoning for granting summary judgment. *See Vt. Teddy Bear*, 373 F.3d at 244; *see also Giannullo v. City of New York*, 322 F.3d at 143, n.5; Fed. R. Civ. P. 56(a) & (e)(3).

## B. Defendants' Opposition

In response to Plaintiff's Motions, Defendants submitted a Letter requesting that the Motions be stricken or held in abeyance pending further discovery. Dkt. No. 64. Presumably, Defendants

are seeking relief pursuant to Federal Rule of Civil Procedure 56(d).  Pursuant to that Rule, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" grant appropriate relief, including deferring consideration of the motion, denying the motion, and/or allowing more discovery.  FED. R. CIV. P. 56(d).  In such instances, the Second Circuit requires that a defendant submit an affidavit sufficiently detailing: (1) the nature of the uncompleted discovery; (2) how the facts sought are reasonably expected to create genuine issues of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful.  *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).  Here, Defendants simply filed a Letter; they did not attach an affidavit detailing any of the information required in this Circuit.[5]  Accordingly, the Court finds that Defendants have not properly met their burden pursuant to Rule 56(d).  Nevertheless, Defendants' failure to properly respond to Plaintiff's Motions does not result in an immediate grant of the requested relief.  Plaintiff must still demonstrate that undisputed facts entitle him to judgment as a matter of law.  *Giannullo v. City of New York*, 322 F.3d at 140-41.

### C.  Facts[6]

On July 4, 2013, Plaintiff wrote a letter to Defendant Superintendent Martuscello complaining that Defendant Ali, the Muslim Iman, was verbally abusive toward Plaintiff and berated

---

[5] Defendants claim that on April 20, 2015, Plaintiff was served with a Notice of Deposition informing him that his deposition would take place on May 12, 2015.  On May 21, 2015, Defendants filed a Motion for Sanctions seeking dismissal of this action based upon Plaintiff's failure to appear for his deposition.  Dkt. No. 77.  That Motion is presently pending before the Court and will be addressed in a separate opinion.

[6] In support of both Motions, Plaintiff filed Statements of Material Facts, but Defendants did not respond.  In accordance with the applicable standard of review, to the extent that the "facts" asserted by Plaintiff in the Statements of Material Facts are supported by the record, the Court will consider them in the context of the Motions.

inmates. Dkt. No. 60-1, Shawn Woodward Aff.,[7] dated Apr. 17, 2015, at ¶ 2; Dkt. No. 60-4, Attach. 1, Shawn Woodward Affirm., dated Mar. 17, 2015, at ¶ 1; *see also* Dkt. No. 1, Compl., Ex. A.[8] Thereafter, on July 12, 2013, after the Friday Prayer, Ali talked to Plaintiff about that Letter informing Plaintiff that if he had a problem with him, he should not write to the Superintendent but instead should not come to prayer or participate in the fast of Ramadan. Dkt. No. 60-4, Attach. 1, Woodward Affirm. at ¶ 2. On July 15, 2013, Plaintiff was involved in a fight with another inmate and was later moved to keeplock confinement. *Id*. at ¶¶ 3 & 5. From July 15 through July 20, Plaintiff received his Ramadan feed-up meals while in keeplock confinement.[9] *Id*. at ¶ 5. On July 22, 2013, when the Ramadan meals were distributed, Plaintiff was not given a meal and was told by the officer that his name was not on the list; Plaintiff wrote a letter to Defendant Ali complaining about the issue and indicating his belief that this was a retaliatory act. *Id*. at ¶ 6; Compl., Ex. B. On July 23, 2013, Plaintiff did not receive a breakfast meal nor a Ramadan meal to break his fast. Dkt. No. 60-4, Attach. 1, Woodward Affirm. at ¶ 7. From July 24 through July 31, 2013, Plaintiff received regular, institutional meals, but in order for him to fast during the Month of Ramadan, Plaintiff held off on eating his food until sunset, at which time it was typically cold. *Id*. at ¶¶ 8 & 9.

---

[7] In support of both Partial Motions for Summary Judgment, Plaintiff has submitted several Affidavits and Affirmations. *See* Dkt. Nos. 49-1, Shawn Woodward Aff., dated Jan. 27, 2015; 60-1, Shawn Woodward Aff., dated Apr. 17, 2015; 60-4, Attach. 1, Shawn Woodward Affirm., dated Mar. 17, 2015; & 60-4, Attach. 2, Shawn Woodward Affirm., dated Mar. 16, 2015.

[8] In amending his Complaint, Plaintiff did not attach the Exhibits he had submitted as part of his original Complaint. *Compare* Dkt. No. 43 *with* Dkt. No. 1. Nevertheless, in light of his *pro se* status, the Court has considered documents attached to his original Complaint to the extent such can be deemed referenced to and therefore incorporated into his Second Amended Complaint.

[9] Due to his keeplock confinement, Plaintiff was not able to go to the mess hall with the other Muslim inmates. Dkt. No. 60-4, Shawn Woodward Affirm., dated Mar. 16, 2015, at ¶ 5.

On July 26, 2013, Plaintiff filed a grievance against Defendant Ali. *Id*. at ¶ 8. On the same day, Plaintiff's name was placed back on the Ramadan feed-up list. Dkt. No. 49-4, Pl.'s Ex. 4, Defs.' Resp. to Interrog. at ¶ 12. On August 1, 2013, Plaintiff wrote a letter to Ali stating, "I have been placed back on the Ramadan feed up list. Thank you." Compl., Ex. C-2.

In August through September, 2013, Plaintiff participated in several conferences related to civil cases pending in other districts. Dkt. No. 60-4, Attach. 1, Woodward Affirm. at ¶ 13. Security staff began asking questions about the amount of conferences and the length of time that Plaintiff attended them. *Id*. at ¶ 14. On September 24, Plaintiff told Counselor Schwebler[10] that because of all the questions he received, he was concerned for his safety. *Id*. at ¶ 15. Approximately nine hours after that conversation took place, Plaintiff was escorted from the law library to a special housing unit ("SHU"). On September 25, 2013, Plaintiff received a misbehavior report, dated September 24, 2013, authored by Defendant CO Baldwin, charging Plaintiff with possessing a weapon, contraband, and altered item. *Id*. at ¶ 17 & Attach. Two. On September 30, 2013, a disciplinary hearing commenced regarding the misbehavior report. Dkt. No. 60-4, Attach. 1, Woodward Affirm. at ¶ 18 & Attach. Three. Plaintiff asserted that the charges were false and were lodged in retaliation for the exercise of free speech. Dkt. No. 60-4, Attach. 1, Woodward Affirm. at ¶ 18. Plaintiff sought to call Counselor Schwebler as a witness to corroborate the discussion regarding Plaintiff's safety concerns. *Id*. The hearing was adjourned and later that day Defendant CO Stevenson came to Plaintiff's cell with a "Refusal to Attend the Hearing" form for Plaintiff to execute, but Plaintiff refused to sign the form and gave it back. *Id*. at ¶ 19 & Attach. Four. Plaintiff did not attend the remainder of the disciplinary hearing and was found guilty of the charges. Dkt. No. 60-4, Attach.

---

[10] Counselor Schwebler is not named as a defendant in this matter.

1, Woodward Affirm. at ¶ 20 & Attach. Three.  Plaintiff was sentenced to four months in the SHU and four months loss of good time credits.  Dkt. No. 60-4, Attach. Five.

### D.  Analysis

#### 1.  Religious Claims Against Ali and Martuscello

The First Amendment to the United States Constitution guarantees the right to free exercise of religion.  U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  The free exercise clause applies to prison inmates, subject to appropriate limiting factors.  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  To assess a free exercise claim, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective."  *Farid v. Smith*, 850 F.2d 917, 926 (1988) (citations omitted).

The principles which guide the analysis of a free exercise claim are similar to those applicable to an RLUIPA cause of action, although the two claims are analyzed under somewhat different frameworks.  *See Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006).

RLUIPA provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of a burden on that person—
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

RLUIPA prohibits governmental entities subject to its reach from imposing a substantial burden on religion even where it stems from a generally applicable law, practice, or policy, but it places a higher burden on the defendants than does the First Amendment, which requires only that an infringement be "reasonably related to legitimate penological interests." *Dove v. Broome Cnty. Corr. Facility*, 2011 WL 1118452, at \*10 (N.D.N.Y. Feb. 17, 2011) (internal citations omitted). While the statute does not define "substantial burden," the Second Circuit has assumed that "[s]ince substantial burden is a term of art in the Supreme Court's free exercise jurisprudence . . . Congress, by using it, planned to incorporate the cluster of ideas associated with the Court's use of it." *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007) (citations omitted). The Supreme Court has held that a substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981) (cited in *Westchester Day Sch. v. Vill. of Mamaroneck* ).

In this case, Plaintiff states that:

> Defendant Ali deprived plaintiff of his right to Free Exercise of Religion under the First and Fourteenth Amendment by unlawfully removing plaintiff's name from the Ramadan Feed-Up list for ten days which caused Plaintiff to be burden [sic] in his fasting of the Month of Ramadan; Defendant Ali is also charged with violating plaintiff's right to freely exercise his religion under . . . []RLUIPA[] . . . ; Because of this plaintiff was also deprived of approximately 48 hours of meals.

2d Am. Compl. at ¶ 27.

Plaintiff's Second Amended Complaint and Motions for Partial Summary Judgment refer generally to Ramadan but are entirely devoid of any reference to Plaintiff's personally held religious beliefs. Moreover, while Plaintiff states that he participated in Ramadan, which began on July 11, 2013, and explains that Muslims are "obligated to fast from sun up to sun down," he has not explained why the removal of his name from the Ramadan feed-up list and denial of two meals

*-10-*

substantially burdened his exercise of religious beliefs. Plaintiff's participation in Ramadan does not establish a *per se* sincerely held belief. Thus, in the absence of any admissible facts with respect to Plaintiff's personally held beliefs or how Defendants' conduct impacted those beliefs, we find that Plaintiff has failed to meet his burden of showing that his professed religious beliefs are sincerely held and were infringed. *See Evans v. Albany Cnty. Corr. Facility*, 2009 WL 1401645, at *8 (N.D.N.Y. May 14, 2009) (granting summary judgment on a prisoner's First Amendment claim after finding that the plaintiff failed to "allege[ ] or establish[ ] how receiving non-vegetarian meals infringed on his sincerely held religious beliefs") (citing *Benjamin v. Coughlin*, 905 F.2d 571, 580 (2d Cir. 1990)); *see also Odom v. Dixion*, 2008 WL 466255, at *6 (W.D.N.Y. Feb. 15, 2008) (noting that a showing of sincerity is a threshold requirement for any First Amendment or RLUIPA claim). As such, the Court finds that Plaintiff has not met his burden as the moving party to show that he is entitled to judgment as a matter of law on this claim and we recommend **denying** Plaintiff's Motion for Partial Summary Judgment on his free exercise and RLUIPA claims.[11]

### 2. Retaliation

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

---

[11] Even assuming Plaintiff could establish that he was entitled to summary judgment on his First Amendment free exercise claims, Plaintiff would not be entitled to summary judgment on his RLUIPA claims. In the Second Amended Complaint, Plaintiff asks only for damages, however, monetary damages are not available under RLUIPA. *Sosamon v. Texas*, __ U.S. __, 131 S.Ct. 1651, 1659 (2011); *Celestin v. Fischer*, 2013 WL 5406629, at *8 (N.D.N.Y. Sept. 23, 2013) (granting the defendants' motion to dismiss the plaintiff's RLUIPA claims because the plaintiff sought solely monetary relief).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. A prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d at 872–73. A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "de minimis and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id*. at 492 (internal quotation marks and citations omitted) (cited in *Davis v. Goord*, 320 F.3d at 353). Because of the ease with which retaliation claims may be asserted, including the issuance of misbehavior reports due to retaliatory animus, the Second Circuit has advised courts to scrutinize the claim with particular care. *Dawes v. Walker*, 239 F.3d at 491, *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).

In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing*, inter alia, Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal quotation marks and citations omitted)).

Although a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report, the issuance of a false misbehavior report in retaliation for exercising a constitutional right is actionable under 1983. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

a.  Claims against Ali and Martuscello

Plaintiff claims that Defendants Ali and Martuscello retaliated against him for submitting a Letter, dated July 4, 2013, to Defendant Martuscello in which Plaintiff complains about Ali's mistreatment of Muslim inmates. According to Plaintiff, on July 12, 2013, just after Ramadan began, Ali confronted Plaintiff during the Friday prayer about his July 4th Letter; Ali told Plaintiff that if there was a problem, he should not write to Martuscello but instead should simply not attend Friday Prayer or participate in the fast of Ramadan. On July 22, after participating in the fast of Ramadan for several days, Plaintiff was not given a meal and was informed that he was not on the Ramadan feed-up list; as a result, Plaintiff was deprived of food for forty-eight hours. That day, Plaintiff wrote a letter of complaint to Defendant Ali, asserting that his removal from the list was

retaliation for his July 4th Letter. Plaintiff also complained to several other corrections staff and was directed to use "institutional meals" to break his fast. On July 26, Plaintiff filed a grievance regarding Defendant Ali, and that same date, Plaintiff's name was put back on the Ramadan Feed-up List. *See generally* Dkt. No. 49-1, Shawn Woodward Aff., dated Jan. 27, 2015, & Ex. 4, Defs.' Resp. to Interrog. at ¶ 12.

The scope of protected activity is construed broadly and may include letters from inmates. In this case, we find that the Plaintiff's July 4th Letter to Defendant Martuscello constitutes protected activity, *Gill v. Pidlypchak*, 389 F.3d at 389, and Plaintiff's removal from the Ramadan Feed-Up list constitutes an adverse action, *Davidson v. Chestnut*, 193 F.3d 144, 149, (2d Cir. 1999) (signaling that denying an inmate a kosher diet is an adverse action) (cited in *Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (N.D.N.Y. 2009) & *Reid v. Donald*, 2013 WL 5437638, at *10 (N.D.N.Y. Sept. 27, 2013)). However, Plaintiff has not shown that the adverse action is connected to his protected activity, nor that the decision to remove him from the Feed-Up list was made by either Defendant Ali or Martuscello. Instead of providing evidence of Defendants Ali's and Martuscello's personal involvement in that decision,[12] Plaintiff merely relies upon the proximity between the date he wrote the original letter of complaint, the date Ali confronted him, and the date he was removed from the list. Because the record before the Court does not contain admissible proof that could lead a reasonable factfinder to conclude, as a matter of law, that Ali and Martuscello retaliated against Plaintiff, summary judgment on his retaliation claims against Ali and Martuscello should be **denied**.

b. Retaliation Claims Against Baldwin

Plaintiff claims that on September 25, 2013, Defendant Baldwin filed a false misbehavior

---

[12] The Court notes that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).

report charging Plaintiff with possession of a weapon. Second Am. Compl. at ¶ 22. Plaintiff asserts that these false charges were lodged against him in retaliation for Plaintiff exercising his First Amendment rights during the period of July 26 through September 24, 2013. Specifically, Plaintiff filed two grievances against Defendant Ali, Plaintiff wrote a letter of complaint to Captain Shanley about a civilian cook under which Plaintiff had been assigned to work,[13] and Plaintiff attended several conferences regarding his pending litigations in Federal Court. Second Am. Compl. at ¶ 18.

Upon review, the Court finds that Plaintiff's allegations are not supported by admissible proof. Speculation, temporal proximity, and circumstantial evidence that Baldwin retaliated because Plaintiff filed a grievance or letter are insufficient to establish summary judgment. Simply put, the record contains no evidence of Baldwin's alleged retaliatory animus, *i.e.*, how, why, or whether Baldwin was motivated by Plaintiff's complaints and attendance at conferences, nor are there undisputed facts establishing that Baldwin was aware of Plaintiff's complaints and pending litigation activity *See Lewis v. Johnson*, 2010 WL 3785771, at *16 (N.D.N.Y. 2010). Indeed, Plaintiff does not offer any evidence establishing any connection between Baldwin and Captain Shanley, or the incident that gave rise to Plaintiff's letter to Captain Shanley or the litigants involved in Plaintiff's lawsuits. While the filing of a false misbehavior report may constitute an adverse action, the record is devoid of any evidence that Baldwin's misbehavior report was, indeed, false. Indeed, Plaintiff offers nothing other than the existence and timing of the misbehavior report. Thus, Plaintiff fails

---

[13] Plaintiff asserts that on July 15, 2013, while working in the "dietroom," Plaintiff was struck from behind by another inmate and a fight erupted. Second Am. Compl. at ¶ 16. According to Plaintiff, in his letter to Captain Shanley, who is not a defendant, he complained that Grippin, who is also not a defendant, failed to note in the resulting misbehavior report that Plaintiff had been struck from behind by another inmate. *Id*. at ¶ 18. Plaintiff further alleges that when the fight was broken up, Defendant Law began choking Plaintiff in the presence of other officers and civilians, thus providing the basis for Plaintiff's Eighth Amendment claims against Defendant Law, for which he does not seek summary judgment in the present Motions. *Id*.; *see also generally* Dkt. Nos. 49 & 60.

to establish the requisite nexus between his protected conduct and the adverse action. Plaintiff's conclusory assertions are insufficient to warrant the imposition of judgment as a matter of law. Thus, we recommend that Plaintiff's Motions be **denied** as to Plaintiff's retaliation claims against Defendant Baldwin.

### 3. Eighth Amendment Claims Against Ali and Martuscello

Plaintiff claims that he was deprived of food for forty-eight hours in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Dkt. No. 49-1, Woodward Aff. at ¶¶ 15-17. Specifically, Plaintiff asserts that on July 22, 2013, after fasting all day in observance of Ramadan, Plaintiff was not provided with a meal because he was not on the Feed-Up List. *Id*. at ¶ 67. The following date, Plaintiff did not receive any meals. *Id*. at ¶ 68. It appears Plaintiff was told conflicting information: when the regular, institutional meals were distributed, he was told he would not get one because he was on the Ramadan Feed-Up List, however, when the Ramadan meals were distributed, he did not receive one because he was not on the List. *Id*.

The Eighth Amendment prohibits cruel and unusual punishment of inmates. U.S. Const. amend. VIII. To establish civil liability for a violation of the conditions of confinement under the Eighth Amendment, a § 1983 plaintiff must demonstrate that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297–99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996)). The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation

omitted); *Brown v. Eagen*, 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009); *Midalgo v. Bass*, 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006). "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment," but the failure to provide food must present an immediate danger to the prisoner's health. *Moncrieffe v. Witbeck*, 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles v. Coughlin*, 725 F.2d at 15); *M.F. v. Reish*, 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996).

Here, Plaintiff has not established that the deprivation of food posed an immediate danger to his health. In addition, Plaintiff fails to establish that Defendant Ali or Defendant Martuscello played any role in the deprivation of meals or that either of them acted with the requisite subjective state of mind. Accordingly, we recommend that Plaintiff's Motions for Summary Judgment on his Eighth Amendment claim be **denied**.

*4. Claims Against Stevenson*

a. Fourteenth Amendment Due Process Claims

Plaintiff alleges that Stevenson violated his Fourteenth Amendment rights when he denied Plaintiff the right to attend his disciplinary hearing, call witnesses, or present evidence. Second Am. Compl. at ¶ 31. In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from state statute or regulations. *Id.*

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and

(2) was deprived of that interest without being afforded sufficient process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d at 336.

While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz v. McBride*, 380 F.3d at 654; *Colon v. Howard*, 215 F.3d at 231.

Should it be found that an inmate possessed a liberty interest in remaining free from the

segregative confinement, that inmate possesses certain due process rights under the Fourteenth Amendment in the context of a disciplinary hearing, but "the full panoply of rights" due a defendant in a criminal proceeding does not apply. *Applewhite v. Sheahan*, 2013 WL 144957, at \*10 (W.D.N.Y. Jan. 11, 2013) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). The Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff v. McDonnell*, 418 U.S. at 539. Specifically, with respect to a disciplinary hearing, Fourteenth Amendment requires (1) at least twenty four hours written notice of the disciplinary charges; (2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals;" (3) the inmate be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken. *Id*. at 563-66.

Here, Plaintiff has not established a protected liberty interest with competent, admissible evidence. While Plaintiff was sentenced to four months of SHU confinement, the record is devoid of any evidence indicating how long Plaintiff was actually confined to the SHU or the conditions that Plaintiff faced while confined to the SHU. As such, summary judgment on this issue would be premature.

But, even assuming that Plaintiff established a liberty interest, to be entitled to summary judgment, Plaintiff must establish, with competent, admissible evidence, that he was denied procedural due process. Due process requires only that an accused have an opportunity to be heard, an opportunity that can be waived. *Boddie v. Connecticut*, 401 U.S. 371, 377-78 (1971). "[I]t is

well established federal precedent that an inmate's refusal to attend a disciplinary hearing waives his due process objections where it occurs through no fault of prison authorities." *Hinton v. Prack*, 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (citations omitted). Here, there are genuine issues of fact with respect to whether Plaintiff was denied the right to attend his disciplinary or waived his right to be heard at said hearing. Plaintiff alleges that Stevenson presented Plaintiff with a Hearing Waiver Form five hours after Plaintiff requested that the Hearing Officer call a particular witness on his behalf, and that Plaintiff refused to execute the Waiver Form. *See* Dkt. No. 60-4, Woodward Aff. at ¶ 9 & Attach. Four; *see also* Second Am. Compl. at 24. While the Waiver Form contained in Plaintiff's Motion has not been properly authenticated, the Court cannot ignore the fact that the Waiver Form contains conflicting information. The Waiver Form contains a signature and DIN above the line entitled "Inmate's Signature and DIN," thereby indicating that the inmate waives his right to be at the Hearing; however, the Waiver Form includes a second signature indicating "Inmate Refused to Sign" and those signatures appear to be identical. Dkt. No. 60-4, Attach. Four. Given these glaring discrepancies, we find that there are triable issues of fact as to whether Plaintiff was afforded the opportunity to attend his Hearing.

Moreover, with respect to Plaintiff's attempt to call witnesses, an inmate has a qualified right to call witnesses in a disciplinary hearing, however, a hearing officer may refuse to call witnesses on the basis of irrelevance or lack of necessity. *See Wolff v. McDonnell*, 418 U.S. at 566; *Scott v. Kelly*, 962 F.2d 145, 146 (2d Cir. 1992) ("[A]n official may refuse to call witnesses as long as the refusal is justifiable."). Here, Plaintiff has alleged that he attempted to call Counselor Schwebler as a witness and claims that the witness was relevant because on July 23, 2013, Plaintiff told Schwebler that he was concerned for his safety due to questions and comments from staff about the

conferences he was attending, and nine hours later he was escorted out of the law library to SHU where, on July 24, 2013, he received the allegedly false Misbehavior Report authored by Defendant Baldwin. Dkt. No. 60-4, Attach. One, Woodward Aff. at ¶¶ 15-17. The documents annexed to Plaintiff's Motion, while not in proper evidentiary form, belie his claim that summary judgment is appropriate. To wit, Plaintiff annexed a document entitled Witness Interview Notice which indicates that Plaintiff sought permission to call Schwebler as a witness and such permission was denied. *Id.*, Attach. Six. The explanation provided was, "[i]nmate requested witness regarding conversation in the hall however witness was not present in the area at the time of the incident and therefore denied." *Id.*

Based upon the lack of any competent evidence supporting Plaintiff's claim that he was denied due process during his disciplinary hearing, the Court recommends that Plaintiff's Motion for Partial Summary Judgment on his Due Process claims regarding his Disciplinary Hearing be **denied**.

### b. Retaliation Claims

Plaintiff further alleges that Defendant Stevenson prevented him from attending his disciplinary hearing and falsely filled out the Hearing Waiver Form in retaliation for requesting Counselor Schwebler as a witness. Second Am. Compl. at ¶ 31. Plaintiff alleges that Stevenson told him his request was "a bad move" and refused to allow Plaintiff to appear at his hearing. *Id.*; *see also* Dkt. No. 60-3 at ¶ 19(a). Assuming Plaintiff's request to call a witness is deemed "protected conduct," Plaintiff has failed to offer anything other than conclusory allegations and speculation that Stevenson acted with any retaliatory animus. Plaintiff merely cites to the allegations in his complaint to demonstrate that there are no material issues of fact. For these

reasons, we recommend **denying** Plaintiff's Motion on this issue.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motions for Partial Summary Judgment (Dkt. Nos. 49 and 60) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


**IT IS SO ORDERED**.

Date:   August 5, 2015
        Albany, New York


Randolph F. Treece
U.S. Magistrate Judge