**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SHAWN WOODWARD,

                              Plaintiff,

          - v -                                              Civ. No. 9:13-CV-1304
                                                                  (LEK/DJS)

DR. ALI, *Muslim Chaplain; Coxsackie Correctional*
*Facility*; DANIEL F. MARTUSCELLO, *Superintendent*
*Coxsackie Correctional Facility*; LAW, *C.O.*; C.O. BALDWIN;
and STEVENSON, *C.O.*,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

SHAWN WOODWARD
Plaintiff, *Pro Se*
00-A-6563
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034

HON. BARBARA D. UNDERWOOD                    JOSHUA E. McMAHON, ESQ.
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

**I. INTRODUCTION**

  *Pro se* Plaintiff Shawn Woodward brings this action, pursuant to 42 U.S.C. § 1983,

alleging that Defendants violated his constitutional rights while he was incarcerated at

Coxsackie Correctional Facility.  Dkt. No. 1, Compl.  The history of this long pending civil rights claim was extensively chronicled in this Court's August 5, 2015 Report and Recommendation, Dkt. No. 85, and reference is made to that Decision for the basic factual background of the dispute.  The matter was originally filed in October 2013.  Compl. Plaintiff amended his Complaint as of right, and on December 2, 2014 he was granted further leave to file a Second Amended Complaint, which is now the operative pleading.  Dkt. No. 43, Sec. Am. Compl.  Plaintiff then moved for partial summary judgment and on September 29, 2015, that Motion was denied.  Dkt. No. 94.  Discovery was then completed on January 6, 2017.  Dkt. No. 116.

Presently before the Court is Defendants' September 29, 2017 Motion for Summary Judgment, which has been fully opposed by Plaintiff.[1]  For the reasons that follow, I recommend that Defendants' Motion for Summary Judgment be **granted in part and denied in part**.

---

[1]  Submitted in support of the Motion are the following:
1.  The Notice of Motion, Dkt. No. 148.
2.  Defendants' Memorandum of Law, Dkt. No. 148-1.
3.  Defendants' Statement of Material Facts Pursuant to Local Rule 7.1(a)(3), Dkt. No. 148-2.
4.  Declaration of Joshua McMahon, with Exhibits, Dkt. Nos. 148-3 through 148-5.
5.  Declaration of Rachel Seguin, with Exhibits, Dkt. Nos. 148-6 through 148-8.
6.  Declaration of Tisha Suprenant, with Exhibits, Dkt. Nos. 148-9 through 148-11.
7.  Declaration of Wayne Stevenson, with Exhibit, Dkt. Nos. 148-12 through 148-13.

Submitted in opposition to the Motion are the following:
1.  Plaintiff's response to Defendants' Rule 7.1(a)(3) Statement of Material Facts, Dkt. No. 161.
2.  Affidavit of Shawn Woodward, Dkt. No. 161-1.
3.  Plaintiff's Memorandum of Law in Opposition, with Exhibits, Dkt. Nos. 161-2 through 161-3.

## II.  FACTS

On July 4, 2013, Plaintiff wrote a letter to Defendant Superintendent Martuscello complaining that Defendant Ali, the Muslim Iman, was verbally abusive toward Plaintiff and berated inmates.  Dkt. No. 161-1, Woodward Aff., dated Jan. 28, 2018, at ¶ 1; *see also* Compl., Ex. A.  Thereafter, on July 12, 2013, after the Friday Prayer, Ali talked to Plaintiff about that Letter, informing Plaintiff that if he had a problem with him, he should not write to the Superintendent but instead should not come to prayer or participate in the fast of Ramadan.  Woodward Aff. at ¶ 3.  On July 15, 2013, Plaintiff was involved in a fight with another inmate and was later moved to keeplock confinement.  *Id*. at ¶¶ 8 & 11.  From July 15 through July 20, Plaintiff received his Ramadan feed-up meals while in keeplock confinement.[2]  *Id*. at ¶ 13.  On July 22, 2013, when the Ramadan meals were distributed, Plaintiff was not given a meal and was told by the officer that his name was not on the list; Plaintiff wrote a letter to Defendant Ali complaining about the issue and indicating his belief that this was a retaliatory act.  *Id*. at ¶ 14-15; Compl., Ex. B.  On July 23, 2013, Plaintiff did not receive a breakfast meal nor a Ramadan meal to break his fast.  *Id*. at ¶ 16.  From July 24 through July 31, 2013, Plaintiff received regular, institutional meals, but in order for him to fast during the Month of Ramadan, Plaintiff held off on eating his food until sunset, at which time it was typically cold.  *Id*. at ¶ 17.

On July 26, 2013, Plaintiff filed a grievance against Defendant Ali.  *Id*. at ¶ 18; Dkt.

---

[2] Due to his keeplock confinement, Plaintiff was not able to go to the gym with the other Muslim inmates.  *Id.* at ¶ 11.

No. 148-11 at pp. 1-3.  On the same day, Plaintiff's name was placed back on the Ramadan feed-up list.  Dkt. No. 148-11 at p. 31.  On August 1, 2013, Plaintiff wrote a letter to Ali stating, "I have been placed back on the Ramadan Feed Up List.  Thank you."  *Id.* at p. 11; Compl., Ex. C-2.

Between March and October, 2013, Plaintiff participated in several conferences related to civil cases pending in other districts.  Woodward Aff. at ¶ 33.  Security staff began asking questions about the amount of conferences and the length of time that Plaintiff attended them.  *Id.* at ¶ 34.  On September 24, Plaintiff told Counselor Schwebler[3] that because of all the questions he received, he was concerned for his safety.  *Id.* at ¶ 35.  Approximately nine hours after that conversation took place, and after a search of Plaintiff's cell, Plaintiff was escorted from the law library to the Special Housing Unit ("SHU").  *Id.* at ¶ 36.  On September 25, 2013, Plaintiff received a misbehavior report, dated September 24, 2013, authored by Defendant CO Baldwin, charging Plaintiff with possessing a weapon, contraband, and altered item.  *Id.* at ¶ 37.  Plaintiff generally asserts that the charges were false and were lodged in retaliation for his exercise of free speech.  *Id.*

On September 30, 2013, a disciplinary hearing commenced regarding the misbehavior report.  *Id.* ¶ 38.  Plaintiff sought to call Counselor Schwebler as a witness to corroborate the discussion regarding Plaintiff's safety concerns.  *Id.* at ¶¶ 39-40. The hearing was adjourned and later that day Defendant CO Stevenson came to Plaintiff's cell with a "Refusal to Attend

---

[3] Counselor Schwebler is not named as a defendant in this matter.

the Hearing" form for Plaintiff to execute, but according to Plaintiff he refused to sign the form and gave it back. *Id.* at ¶ 42; *but see* Dkt. No. 148-13 (hearing refusal form allegedly signed in two separate places by Plaintiff). Plaintiff did not attend the remainder of the disciplinary hearing and was found guilty of the charges. Woodward Aff. at ¶ 43. Plaintiff was sentenced to four months in the SHU and four months loss of good time credits. Sec. Am. Compl. at ¶ 24.

## III. CLAIMS

The claims that presently remain[4] are as follow:

1. Plaintiff alleges that Defendants Ali and Martuscello violated Plaintiff's First Amendment rights by not providing Plaintiff with Ramadan meals during a period of time in July of 2013 when Plaintiff was held in keep-lock at the Coxsackie Correctional Facility. Sec. Am. Compl. at pp. 5-6. Plaintiff alleges that this omission was in retaliation for Plaintiff writing a letter of complaint regarding Defendant Ali. *Id.* at ¶ 7.

2. Next, Plaintiff alleges that Defendant Law choked him during a pat-down frisk following a fight with another inmate, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at p. 6, ¶¶ 16-17.

3. Plaintiff's third claim is that on September 25, 2013 Defendant Baldwin retaliated against Plaintiff's exercise of his rights of free speech and access to the courts, by searching Plaintiff's cell and filing a false misbehavior report. *Id.* at p. 7, ¶ 22.

---

[4] Plaintiff has agreed to withdraw his claims against Defendants Ali and Martuscello under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Eighth Amendment. Dkt. No. 161-2, Pl.'s Mem. of Law, p. 32.

4.  Plaintiff's final claim is that Defendant Stevenson violated his due process rights by not allowing Plaintiff to attend his disciplinary hearing, and by refusing to call a particular witness at the hearing that Plaintiff felt was necessary.  *Id.* at p. 7-8, ¶¶ 23-24.

## IV.  DISCUSSION

### A.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To defeat a motion for summary judgment, the non-movant must "'set forth specific facts showing that there is a genuine issue for trial,' and cannot rest on 'mere allegations or denials' of the facts asserted by the movant."  *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1066 (2d Cir. 1995) (internal quotation marks omitted) (citations omitted); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in

deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Defendants' Arguments

Defendants make six arguments in support of their Motion for Summary Judgment. First, Defendants maintain that as to Defendants Ali, Martuscello, Law, and Baldwin, Plaintiff has failed to exhaust his administrative remedies as required under the Prisoner Litigation Reform Act ("PLRA"). In particular, Defendants allege that Plaintiff only filed

a single grievance during the relevant time period, which dealt with the Ramadan feed-up list for F block, and that the grievance was not fully exhausted. Dkt. No. 148-1, Defs.' Mem. of Law, pp. 2-10. Second, Defendants argue that the claims against Defendants Ali and Martuscello should be dismissed because the alleged failure to provide religious meals on between two and eight occasions does not support a § 1983 claim, and because Plaintiff has failed to provide evidence that Martuscello was involved in the removal of Plaintiff from the Ramadan list or that Ali had motivation to retaliate against him. *Id.* at p. 11. Third, summary judgment is said to be warranted in favor of Defendant Baldwin regarding the claim he improperly searched Plaintiff's cell and filed a false misbehavior report charging Plaintiff with possession of a weapon. Defense counsel argues that these claims cannot withstand the present Motion due to the failure of Plaintiff to show any retaliatory motive, or to establish that the conduct in question was not protected by a dual motivation. *Id.* at p. 15-16.

Fourth, Defendant Law is said to be entitled to summary judgment because any use of force by him upon Plaintiff was, at most, *de minimis* and therefore not unconstitutional. *Id.* at pp. 17-18. Fifth, Defendant Stevenson argues that the claim against him should be dismissed as Plaintiff was not deprived of due process as he was given notice of the hearing in question; appeared and pled not guilty; refused to make a statement; and asked that two witnesses be called and when Hearing Officer Gutwein granted one witness, but denied the other, Plaintiff refused to attend the rest of the disciplinary hearing and signed a hearing waiver form. *Id.* at pp. 21-23. Alternatively, Defendant Stevenson argues that he is entitled to judgment in his favor based on the fact that Plaintiff was only placed in the special housing

unit for four months, and the conditions of SHU were not atypical, nor did they pose a significant hardship. *Id.* at pp. 19-21. Finally, all Defendants argue that they should be entitled to the defense of qualified immunity. *Id.* at pp. 23-24.

### C. Plaintiff's Response

Plaintiff has submitted a sixty page Memorandum of Law; a forty-seven page Affidavit; and a forty-six page Response to Defendants' Statement of Material Facts, all in opposition to the present Summary Judgment Motion. Dkt. No. 161-2, Pl.' s Mem. of Law; Dkt. No. 161-1, Pl.'s Aff.; and Dkt. No. 161, Pl.'s Response to Defs.' SMF. His arguments, distilled to their essence, are as follows:

First, Plaintiff maintains that he has fully exhausted his claims. As to grievance CX 17863-13, he argues that Defendants are estopped from arguing that his failure to appeal the unresolved parts of his grievance bars his claim, because he was not provided with the necessary form to appeal the grievance, and because the Department of Corrections and Community Supervision ("DOCCS") considered the matter resolved. Pl.'s Mem. of Law at pp. 1-13. As to the issue of exhaustion regarding the Eighth Amendment claim of excessive force by Defendant Law, Plaintiff maintains that after the incident occurred Defendant Law stated that Plaintiff's safety depended upon him "not saying anything" and refusing medical attention. *Id.* at p. 15. Thus, Plaintiff maintains he was prevented from filing a grievance through intimidation. *Id.* As to Defendants Baldwin and Stevenson, Plaintiff notes that

inmates may not file grievances as to the disciplinary process.[5]  *Id.* at p. 19.

Second, Plaintiff opposes summary judgment on his First Amendment claim.  He notes that he is a practicing Muslim, and has been since 2000, and he sets forth in detail the significance of proper fasting for his religion.  *Id.* at pp. 22-23.  He explains that certain meals are structured, so that the sunrise-to-sunset fasting associated with his religious practice can be accomplished with "ease" rather than "hardship," as required by his faith.  *Id.* at p. 23.  According to Plaintiff, he did not get an evening meal on July 22, 2013, nor a breakfast meal on July 23, 2013.  *Id.* at p. 25.  Therefore his fasting was not complete, or it was prevented, on those two days.  *Id.* at pp. 25-26.  When Plaintiff received institutional meals, he would have to save those meals to eat during the appropriate time period from July 24, 2013 to July 31, 2013, and when he ate his meal, it was often cold.  *Id.* at p. 27.  Plaintiff alleges that this placed a substantial burden on his religious practices, and further that there was no institutional reason for keeping him off the Ramadan feed-up list.  *Id.* at p. 29.

With regard to the First Amendment retaliation claim against Defendant Baldwin, Plaintiff asserts that he engaged in litigation-related activities; that he was questioned by unnamed security staff regarding those activities; that he reported his concerns to his counselor; and that within nine hours his cell had been searched by Defendant Baldwin, who then filed a false misbehavior report against him.  *Id.* at pp. 39-42.  Plaintiff asserts that

---

[5]  Defendants have not included Stevenson in their exhaustion arguments, presumably for this very reason. Defs.' Mem. of Law, at pp. 2-10.  *See Grubbs v. Serrell*, 2018 WL 1175232, at *2 (N.D.N.Y. Mar. 6, 2018) ("When a plaintiff presents a claim arising directly out of a disciplinary . . . hearing . . . he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance[.]") (internal quotation marks omitted) (citation omitted).

Defendant Baldwin's activities were in retaliation for Plaintiff's attempts to utilize the courts, and that the resulting discipline, involving placement for four months in SHU, is sufficient to deter an inmate of ordinary firmness from engaging in First Amendment activities.

As to the Eighth Amendment claim, Plaintiff notes that after his involvement in a fight with a fellow inmate, he placed his hands on the wall in front of him so as to allow a pat frisk and, without any need or justification, Defendant Law began choking Plaintiff, leaving a red ring on Plaintiff's neck. *Id*. at p. 46. Plaintiff alleges that Defendant Law acted maliciously and that, when he was done, he threatened Plaintiff by telling him not to report anything to the nurse. Finally, Plaintiff notes that his version of events is uncontradicted on the Motion because no affidavit of Defendant Law has been provided. *Id.* at pp. 48-49.

Plaintiff maintains that summary judgment is not warranted on his due process claim against Defendant Stevenson. *Id.* at pp. 49-58. According to Plaintiff, it was Defendant Stevenson who advised him that he, Plaintiff, was refusing to attend his disciplinary hearing. *Id.* Stevenson also advised against calling Counselor Schwebler as a witness. *Id.* Plaintiff states that he refused to sign the refusal form when Defendant Stevenson insisted that he do so, and that because of Defendant Stevenson's actions, he was prevented from attending his hearing and calling the witnesses he wanted on his behalf and therefore was ultimately found guilty of the disciplinary charge in violation of his rights. *Id.* He further argues that his due process rights were implicated because his time at SHU constituted an atypical and significant hardship. *Id.* at pp. 53-56.

Finally, Plaintiff argues that all Defendants should be denied qualified immunity

because each of them violated his clearly established rights. *Id.* at pp. 59-60.

### D. Analysis

*1. Religious and Retaliation Claims Against Defendants Ali and Martuscello*

*a. Exhaustion*

As a preliminary matter, Defendants argue that Plaintiff never exhausted his administrative remedies regarding his First Amendment claims. Plaintiff responds that he did exhaust, either because his grievance was resolved in his favor informally, or because his attempts to file a further grievance were stymied by the position of DOCCS that the matter had already been resolved.

As to the exhaustion issue, Defendants have submitted an affidavit from Rachel Seguin, the Administrative Director of the Inmate Grievance Program at DOCCS, and she states that with regard to the violations alleged in the Amended Complaint, only a single grievance was ever filed during the relevant time period, grievance number CX-17863-13, and this grievance related solely to the Ramadan list. Dkt. No. 148-6, Sequin Decl., ¶ 20. The single grievance was said to be informally resolved, and was closed at the facility level on August 19, 2013. *Id.*

The Inmate Grievance Program Supervisor, Tisha Suprenant, confirms the filing of a grievance by Plaintiff about being left off the Ramadan feed-up list. Dkt. No. 148-9, Suprenant Decl. at ¶ 15; Dkt. No. 148-11. Plaintiff's July 26, 2013 grievance requests "that my name be place[d] back on the Ramadan Feed Up list." Dkt. No. 148-11 at p. 4. On July 30, 2013, the grievance was provided to Defendant Ali by Inmate Grievance Program

Supervisor E. Killar, with instructions to attempt to informally resolve it prior to it being formally filed. *Id.* at p. 8. It appears that Defendant Ali did as instructed, for on August 1, 2013, Plaintiff Woodward sent a letter to Defendant Ali stating "I have been placed back on the Ramadan Feed Up list. Thank you." *Id.* at p. 11. Therefore, the initial grievance did not go beyond the informal resolution stage. However, on August 12, 2013, Plaintiff filed another grievance asking that his prior grievance be coded, filed, and a copy sent back to him. *Id.* at pp. 5-7. Supervisor Killar expressed surprise at this request in light of the informal resolution, but filed the initial grievance and recommended that it be denied as being resolved. *Id.* at p. 10. On August 19, 2013, Plaintiff signed the inmate grievance form indicating that the informal resolution was acceptable. *Id.* at p. 2.

Defendants' argument is that, by accepting the informal resolution, Plaintiff technically "withdrew" his grievance, and therefore he did not exhaust his administrative remedies. Defs.' Mem. of Law at p. 7. Alternatively, Defendants argue that to the extent that the matter was not withdrawn, whatever unresolved issues existed were never the subject of an appeal to CORC, and thus were not fully exhausted. *Id.* Defendants' arguments in this regard simply do not withstand scrutiny.

First, the evidence produced on this Motion establishes that the grievance filed by Plaintiff was favorably resolved, and was not withdrawn. As correctly noted by Sgt. Killar in his August 13, 2013 communication, "informal resolutions are part of the process, as we are here to solve problems." Dkt. No. 148-11 at p. 10. *See also* N.Y.C.R.R. § 701.3 (encouraging resolution of grievances through informal channels). Since 2001, the Second

Circuit has held that the favorable resolution of a grievance through informal channels satisfies the PLRA's exhaustion requirement. *Marvin v. Goord*, 255 F.3d 40, 43 n.3 (2d Cir. 2001). As noted by the Chief Judge of this District:

> District courts have interpreted this holding to mean that an inmate's efforts to resolve a matter through informal channels satisfies the exhaustion requirement only if the efforts resulted in the matter being concluded in the inmate's favor. Generally, those district courts reason that, when a matter has been concluded in the inmate's favor, it has been resolved (for purposes of his available exhaustion remedies) because nothing exists from which the inmate can appeal.

*Goodson v. Silver*, 2012 WL 4449937, at * 9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.).

Based on the forgoing, I find that Plaintiff did exhaust his administrative remedies as to his claim of a First Amendment violation when he grieved the fact that he was left off the Ramadan feed-up list, and he was then placed back on the list as a direct response to his grievance.

### b. Substantive Claim

With regard to the substance of the First Amendment religion/retaliation claim, there are several aspects of that claim to be addressed by the Court. First, it must be understood that Plaintiff is alleging two separate but related First Amendment claims regarding his removal from the Ramadan feed-up list: one, that the removal was in retaliation for his First Amendment right to write a letter of complaint against Dr. Ali; and two, that the removal itself, regardless of the motivation, impacted Plaintiff's First Amendment right to practice his Muslim religion.

"Prisoners have long been understood to retain some measure of the constitutional

protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). "A prisoner's First Amendment rights, however, are '[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system.'" *Gilliam v. Baez*, 2017 WL 476733, at *4 (S.D.N.Y. Feb. 2, 2017) (quoting *Ford v. McGinnis*, 352 F.3d at 588). "Accordingly, a prisoner's free exercise claims are 'judged under a reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights.'" *Id.* (quoting *Ford v. McGinnis*, 352 F.3d at 588).

"To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 Fed. Appx. 52, 55 (2d Cir. 2015).[6] Defendants have argued that Plaintiff's claim that he was deprived of relatively few religious meals constitutes, at most, a *de minimis* effect upon his religious practices, and such an insignificant burden cannot withstand the presently filed Motion for Summary Judgment. There is past support for this position, including a comprehensive analysis by Magistrate Judge David E. Peebles in a case where the plaintiff

---

[6] "[I]t is unclear whether the 'substantial burden' element of this test remains viable," *Davis v. Williams*, 2017 WL 507213, at *2, n. 1 (D. Conn. Feb. 7, 2017), and the Second Circuit has expressed doubt whether a prisoner must make this threshold showing. *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014)) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.") (internal quotation marks omitted); *see also Williams v. Does*, 639 Fed. Appx. 55, 56 (2d Cir. 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs.") (citing *Holland v. Goord*, 758 F.3d at 220–21). However, as both parties have accepted and addressed the substantial burden element, the Court will apply it for purposes of this Motion.

was served ten meals that contained pork, in violation of plaintiff's religious beliefs. *Brandon v. Schroyer*, 2016 WL 1638242, at \*17 (N.D.N.Y. Feb. 26, 2016) (holding that the alleged dietary violation on those ten days was not "constitutionally significant" and collecting cases).   Approximately two months after the *Schroyer* decision, however, the Second Circuit reached a different conclusion and overturned Judge Peebles in a case with facts that are strikingly similar to the present matter.   In *Williams v. Does*, 639 Fed. Appx. 55 (2d Cir. 2016), the Second Circuit reinstated a claim by a Muslim inmate that his religious rights were burdened when he was given premature sunset meals during Ramadan, causing him to either forgo his meal or break his fast.   In that case the plaintiff indicated that not having proper meals during Ramadan was a "grave spiritual sin" that canceled the "validity" of fasting.  *Id.*  In reversing the lower court, the Second Circuit said:

> The District Court relied on non-binding case law when it determined that Williams' burden was *de minimis* because only a few of his meals were delivered prematurely; its reasoning is inconsistent with this Court's case law, which cautions against "the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent. . . ."

*Id*. at \*57 (quoting *Ford v. McGinnis*, 352 F.3d at 593).

Here, Plaintiff has presented in his Affidavit his beliefs regarding the substantial impact the denial of Ramadan meals had on his religious practices.  Pl.'s Aff. at pp. 1-9, 26-31.  In particular, he has explained the significance of fasting to his religion, the significance of the meals before sunrise and after sunset and their relation to that fasting regimen, and the severe negative impact on his religious practices of being omitted from the Ramadan feed-up list.  *Id*.  Having satisfied that burden, it will be up to the trial jury, and not this Court, to

determine if Plaintiff's religious beliefs are sincerely held, and were substantially burdened.[7] As questions of fact on these issues predominate, Defendants' Motion for Summary Judgment on these grounds should be denied.

A similar analysis applies to Plaintiff's First Amendment retaliation claim. "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show [ ] '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).   In order to prove an adverse action, a "plaintiff must show that the defendant's 'retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . Otherwise, the retaliatory act is simply *de minimis*, and therefore outside the ambit of constitutional protection.'" *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011).

Plaintiff alleges that Defendant Ali retaliated against him as a result of the complaint that he filed against the Muslim Chaplain. Sec. Am. Compl. at p. 8.  As noted in this Court's

---

[7] At various points in their brief, Defendants have referred to conclusions made by then-Magistrate Judge Randolph Treece in his previous decision recommending denial of Plaintiff's Motion for Summary Judgment. Defs.' Mem. of Law at pp. 11-15.  For example, Judge Treece held that Plaintiff had not established on that Motion that he held sincere religious beliefs, or that Defendants' conduct resulted in a substantial burden on those beliefs.  However, the prior motion stood in a different posture than the present one, and Judge Treece's comments regarding what was, or was not, before him on that Motion, which required Plaintiff to show that he was entitled to judgment in his favor as a matter of law, are not necessarily applicable to the present (and less onerous) obligation of Plaintiff to establish, through new submissions, that questions of fact exist.  Plaintiff has now submitted the necessary affidavits to create such questions of fact.

August 5, 2015 Report-Recommendation and Order, such a complaint does constitute protected activity. Dkt. No. 85, at p. 14 (*citing Gill v. Pidlypchak*, 389 F.3d at 389). Crediting Plaintiff's version of events, at least for purposes of this Motion, he has also established a causal connection between his initial complaint and his removal from the Ramadan feed-up list. In particular, on July 12, 2013, after Plaintiff had written his complaint to the Superintendent of the facility regarding Dr. Ali, he alleges that Defendant Ali approached him about that very complaint,[8] chastised him for not coming to him directly, and recommended that he not participate in the fasting of Ramadan. Woodward Aff. at pp. 1-2. Shortly thereafter, Plaintiff asserts that Dr. Ali removed him from the Ramadan feed-up list, a list that was controlled and signed off on by Dr. Ali. *Id.* at pp. 5-7, 28-30; Dkt. No. 148-11 at pp. 21-46. After Plaintiff grieved this event, he was approached by Dr. Ali who then, exercising his authority, put his name back on the Ramadan feed-up list. The only question that remains, therefore, is whether removal from the feed-up list constitutes a sufficient adverse action as to implicate the First Amendment. For the reasons set forth above, the Court finds that such action, which Plaintiff credibly alleges substantially burdened his religious practices, could constitute an adverse action. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's First Amendment retaliation claim must fail.[9]

_____

[8] Neither Ali nor Martuscello offers any evidence of how Ali became aware of Plaintiff's complaint to the Superintendent.

[9] The Court notes that Martuscello does not seek summary judgment on the ground that he lacked personal involvement.

## 2. *Excessive Use of Force Claim Against Defendant Law*

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishment,' . . . and applies to states through the Due Process Clause of the Fourteenth Amendment." *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (citing *Robinson v. California*, 370 U.S. 660, 666-67 (1962)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999).

In pursuing such an Eighth Amendment claim, however, the inmate must establish that the conduct alleged is "sufficiently serious" to reach constitutional dimensions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This inquiry is "context specific, turning upon contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d at 263. Regarding the objective element, "a *de minimis* use of force

will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).  In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)

In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury"; thus, "the seriousness of the injury is 'relevant to the Eighth Amendment inquiry, but does not end it.'" *Davidson v. Flynn*, 32 F.3d at 29-30 & n.1 (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct.  To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including:

> the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks omitted); *see also Hudson v. McMillian*, 503 U.S. at 7.

In response to Defendants' Motion, Plaintiff has provided no further details regarding the July 15, 2013, event, other than to say that he was involved in a fight with another

inmate, and that when he turned and placed his hands on the wall after the fight had subsided in order to be pat frisked, Defendant Law physically touched and choked him, which left a mark. Woodward Aff. at p. 4. Plaintiff cites to an October 4, 2013 letter to Anthony Annucci, Acting Commissioner of DOCCS, in which Plaintiff provides the following description of the incident:

> Additionally another [Officer] grabbed me by [my] collar and commenced to choke me and then told me my health depends on whether or not I refused medical attention. Because imprint of my collar could be seen by a red ring left on my neck.

Dkt. No. 148-4 at p. 79.

Accepting Plaintiff's non-conclusory allegations, the question presented on this Motion is whether the acts of Corrections Officer Law, in grabbing Plaintiff's shirt after an inmate-on-inmate fight, causing Plaintiff to choke and leaving a red mark on Plaintiff's neck, but apparently no other injury, are of sufficient magnitude to support an Eighth Amendment claim. The cases in this circuit indicate that they are not. *Trelly v. Geiger*, 2018 WL 573570 (W.D.N.Y. Jan. 26, 2018) (finding corrections officer's use of force in grabbing inmate by the throat, causing him difficulty in breathing, and leaving a red mark, constitutes a *de minimis* use of force that was not repugnant to the conscience of mankind, and thus not an Eighth Amendment violation); *Konovalchuk v. Cerminaro*, 2014 WL 272428, at *16 (N.D.N.Y Jan. 24, 2014) (D'Agostino, J., *adopting report and recommendation by* Hummel, M.J.) (gripping suspect by the neck and threatening him is considered a *de minimis* use of force, even in the Fourth Amendment context); *Felder v. Diebel*, 2012 WL 6690239, at *5

(W.D.N.Y. Dec. 21, 2012) (finding as *de minimis* plaintiff's allegations that he was slapped twice and choked, and as a result he "saw stars" and was "woozy," where medical records showed no signs of injury and there was no medical treatment); *Perry v. Stephens*, 659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009) (finding that corrections officer's acts of slapping and choking inmate, after inmate attempted to kick the officer, which conduct resulted in a small bruise and minor pain, was not sufficiently serious to reach constitutional dimensions, and collecting cases).

Based upon the evidence presented to the Court on this Motion,[10] it is recommended that summary judgment be granted on Plaintiff's Eighth Amendment use of force claim against Defendant Law.[11]

### 3.  Retaliation Claim Against Defendant Baldwin

With regard to the First Amendment retaliation claim against Corrections Officer Baldwin, the Court finds that summary judgment is warranted in favor of that Defendant.

As a general matter, the Fourth Amendment does not protect against searches and seizures of prison cells where the contraband was kept. *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984).  Thus, a sustainable violation could only occur where there is proof that the

---

[10] While the burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, the movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue for which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. at 323.  Here, Plaintiff has failed to submit evidence demonstrating that there is an issue of fact regarding the use of force.

[11] In the event that the reviewing Court disagrees with this conclusion, it is recommended that Defendant Law's alternative argument regarding lack of exhaustion be determined after a hearing, so that the Court can consider and rule upon the credibility of Plaintiff's argument that he did not exhaust because of a threat by Defendant Law. *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).

reason for the otherwise legitimate search was because of some constitutionally impermissible motivation. Similarly, an inmate has no general constitutional right to be free of a false misbehavior report, and for a false accusation to support a § 1983 claim, "[t]here must be more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997).

The evidence before the Court on this Motion is devoid of any admissible evidence showing (1) that the cell search was improper or improperly motivated; (2) that the misbehavior report generated by Defendant Baldwin was in any way false; and/or (3) that there is any causal connection between Plaintiff's alleged First Amendment activities and the conduct complained of against Officer Baldwin. The Court notes that the misbehavior report, previously provided by Plaintiff, specifically states that Defendant Baldwin "… was ordered to frisk D-1-29 per Sgt. Pavlin" and found half of a toothbrush with a piece of metal melted into it. Dkt. No. 60-4 at p. 11, Inmate Misbehavior Report dated September 24, 2013. Pursuant to the Report, therefore, the motivation of Officer Baldwin to search the cell, and thus prepare a report based upon what he found, was a direct order of a person in a position of higher authority to him in the chain of command. Following a direct order of a supervisor is not, in and of itself, conduct in retaliation for First Amendment expression. *Partak v. Behrle,* 2011 WL 7629500, at *15 (N.D.N.Y. Sept. 12, 2011) ("Because defendants . . . searched the cell in response to a direct order from a superior officer, they clearly had a non-retaliatory reason for their actions."); *see also Fleming v. Kelsh*, 9:13-CV-0758, Dkt. No. 45 at p. 14 (N.D.N.Y. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 2757398

(N.D.N.Y. May 12, 2016) (where corrections officers entered cell on orders from a supervisor and used necessary force to subdue an inmate, they did not act in a malicious and wanton manner).

Here, Plaintiff has provided nothing in opposition to the Summary Judgment Motion to show, or even imply, that the search and subsequent report performed and authored by Defendant Baldwin was motivated by his knowledge of Plaintiff's litigation activities and his desire to retaliate against him for those activities. The mere fact that several hours lapsed between Plaintiff's complaint to his counselor, and the subsequent cell search, signifies nothing without some showing that Plaintiff's complaints were communicated to Defendant Baldwin, and that Baldwin's subsequent acts were done with the intent to deter Plaintiff's free speech. Also irrelevant without such a showing is Plaintiff's generalized claim that being placed in a special housing unit would deter an inmate of ordinary strength from engaging in First Amendment activities. Therefore, because Plaintiff has failed to make the necessary showing, it is recommended that Defendant Baldwin's Motion be granted. *Shaheen v. McIntyre*, 2007 WL 3274835, at *13 (N.D.N.Y. Nov. 5, 2007) (granting summary judgment on plaintiff's First Amendment retaliation claim upon the grounds of lack of evidence establishing a causal connection between plaintiff's litigation activities and defendants' searches of plaintiff's prison cell or defendants' filing of misbehavior reports against plaintiff).

In addition to finding that Plaintiff's claims against Defendant Baldwin are substantively baseless, I also conclude that these claims are subject to dismissal based upon

Plaintiff's failure to exhaust his administrative remedies. *Shaheen v. McIntyre*, 2007 WL 3274835, at \*17 (Rule 56 dismissal warranted based upon "failure to adduce record evidence that [plaintiff] exhausted his available administrative remedies before filing suit in federal court."). Plaintiff does not argue that he in fact did file a grievance regarding the cell search or the misbehavior report, but simply asserts that these claims are related to allegations involving the disciplinary process and are thus not subject to the normal exhaustion regimen. Pl.'s Mem. of Law at pp. 19-20. This argument is not legally correct. *E.g. Waters v. Melendez*, 2018 WL 3079764 (N.D.N.Y. May 18, 2018) ("Where the inmate is asserting both retaliation claims and procedural due process claims, he must separately exhaust both types of claims, using the procedure appropriate to each type of claim."). Therefore, and for this alternate reason, summary judgment on the claim against Defendant Baldwin is appropriate.

### 4. Claims Against Stevenson

#### a. Atypical Conditions of Confinement

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation imposed an "atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 483-84.   To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement.   *See Palmer v. Richards*, 364 F. 3d 60, 64 (2d Cir. 2004).   When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate.   *Id.*

While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*.   *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days can be found to be atypical even if under "normal conditions." *Ortiz v. McBride*, 380 F.3d at 654; *Colon v. Howard*, 215 F.3d at 231.

In the present case, Plaintiff received a sentence of 120 days in SHU, together with a loss of four months of good time, and thus he falls within the "intermediate duration" of confinement which requires "a detailed record of the conditions of confinement relative to ordinary prison conditions." *Palmer v. Richards*, 364 F.3d at 64-65 (internal quotation marks omitted).   In this Motion, Defendants have not cited to the actual conditions of SHU where Plaintiff was placed to serve out his sentence, but generally refer to the conditions of Special

Housing mandated by the New York State regulations.  Defs.' Mem. of Law at pp. 20-21.
Defendants conclude that Plaintiff has not come forward with convincing evidence that his
SHU conditions of confinement differed from those of ordinary prisoners.  *Id.* at p. 21.

In response, Plaintiff has provided an Affidavit in which he details the differences
between his disciplinary housing and the ordinary conditions at the facility.  Pl.'s Aff. at pp.
34-40.  Initially, he notes that during his first week of SHU he was deprived of all showers
and recreation.  *Id*. at p. 36.  Moreover, for his entire stay in SHU Plaintiff was not allowed
to talk with other inmates, was limited in his reading materials, was restricted from
significant law library access, and was not eligible for facility work or paid programs.  *Id*.
at pp. 36-38.  Plaintiff states that he was placed next to inmates who caused significant
disturbances by kicking, shouting, and throwing feces.  *Id*. at p. 40.  With regard to
recreation, Plaintiff explains that in ordinary prison life he could go into the rec yard three
times per day, mingle with inmates, play basketball or lift weights, and talk on the phones.
*Id.* at pp. 34-35.  In SHU, by contrast, he was restricted to one hour of recreation, during
which time he was isolated and placed in both handcuffs and chains.  *Id*. at p. 38.  His
visitation was severely limited, and any visitation would take place behind a divide of plastic
and steel.  *Id.* at p. 37.  Finally, Plaintiff notes that while the SHU regulations require similar
food to that of ordinary inmates, that in fact did not occur and he was deprived appropriate
food.  Pl.'s Mem. of Law at pp. 55-56.

Based upon a review of the documents submitted on this Motion, I find that the
conditions of confinement,  as alleged by Plaintiff in his submissions, are sufficient to create

a triable issue of fact as to whether Plaintiff was subject to atypical and significant hardship during his four-month SHU sentence. In so holding, I take to heart Judge Katzmann's admonition that "[d]isputes about conditions may not be resolved on summary judgment." *Palmer v. Richards*, 364 F.3d at 65. Therefore, I recommend that the Court reject Defendants' argument that Plaintiff, as a matter of law, has no protected liberty interest.

### b. Due Process

Assuming a liberty interest, Plaintiff possesses certain due process rights under the Fourteenth Amendment in the context of a disciplinary hearing, "but 'the full panoply of rights' due a defendant in a criminal proceeding does not apply." *Applewhite v. Sheahan*, 2013 WL 144957, at *10 (W.D.N.Y. Jan. 11, 2013) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). The Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff v. McDonnell*, 418 U.S. at 539. Specifically, with respect to a disciplinary hearing, the Fourteenth Amendment requires (1) at least twenty-four hours written notice of the disciplinary charges; (2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (3) the inmate be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken. *Id*. at 563-66.

Plaintiff has presented two arguments regarding his alleged denial of due process. First, Plaintiff contends that the Hearing Officer violated his rights when he refused to call his Counselor as a witness, and that Defendant Stevenson was somehow involved in that violation, as shown by the fact that he advised Plaintiff that calling the Counselor was not a good idea. Sec. Am. Compl. at pp. 7-8. However, an inmate has no constitutional right of confrontation, and a hearing officer has discretion to deny calling a witness for many valid reasons, including relevancy, lack of necessity, or other factors particular to each case. *Wolff v. McDonnell*, 418 U.S. at 566. Due process is satisfied so long as the hearing officer's decision is not arbitrary. *Id.* at 571. Here, the Hearing Officer gave Plaintiff the opportunity to identify the witness in question and to explain, in detail, why he believed that the witness was important to his case. Dkt. No. 60-4 at p. 21; Dkt. No. 148-4 at pp. 45-49. The Hearing Officer clarified, however, that the proposed witness had no factual information concerning the search, or the weapon that was allegedly found. *Id.* Rather, the Hearing Officer understood that the purpose of Counselor Schwebler's testimony was simply to establish that, some hours before the search, the inmate had expressed a concern to his counselor regarding possible retaliation for Plaintiff's litigation activities. *Id.* As previously noted, *see supra* at pp. 23-25, no connection has been shown between that concern and the activities of the Corrections Officer who performed the cell search. Accordingly, it was well within the Hearing Officer's discretion to determine that this proposed testimony was irrelevant. Plaintiff's further claim that Officer Stevenson was involved in this decision, or somehow retaliated against Plaintiff for attempting to call this witness, is also unfounded, as previously

noted by Judge Treece in his August 5, 2015 Report-Recommendation and Order. Dkt. No. 85 at p. 21 ("Plaintiff has failed to offer anything other than conclusory allegations and speculation that Stevenson acted with any retaliatory animus"). Plaintiff has not submitted any additional admissible evidence on this issue in opposition to the present Motion. It is recommended that this aspect of Plaintiff's claim against Defendant Stevenson be dismissed.

The final aspect of Plaintiff's due process claim is his allegation that he was denied the ability to be present at his hearing. Sec. Am. Compl. at p. 9. The record establishes that Plaintiff was present for the first portion of the hearing, at which point he denied any allegation of misconduct and indicated he did not wish to say anything on his behalf at that time. Dkt. No. 148-4 at p. 46. The hearing was then adjourned for a few hours to consider the production of proposed witness Schwebler. Plaintiff alleges that the deprivation to his rights occurred when the hearing was restarted outside his presence, at which point he was ultimately found guilty of the charges.

New York regulations require an inmate to attend a disciplinary hearing, unless he or she refuses to attend, or is excluded for reasons of institutional safety or correctional goals. 7 N.Y.C.R.R. 254.6(a)(2). Due process, in turn, requires only that an accused have an opportunity to be heard, and that is an opportunity that can be waived. *Boddie v. Connecticut*, 401 U.S. 371, 377-78 (1971). "[I]t is well established federal precedent that an inmate's refusal to attend a disciplinary hearing waives his due process objections where it occurs through no fault of prison authorities." *Hinton v. Prack*, 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (citations omitted). Courts have held that even where the inmate

*-30-*

refuses to sign a waiver form, summary judgment is nevertheless appropriate for a due process claim where the undisputed evidence is that the inmate in fact refused to attend the hearing. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 379-80 (N.D.N.Y. 2010). Conversely, where the inmate does not refuse to attend the hearing and there is no valid waiver, or a legitimate safety or penological concern, exclusion of an inmate from a part of a disciplinary proceeding can violate due process. *Brooks v. Prack*, 77 F. Supp. 3d 301, 319 (W.D.N.Y. 2014).

In opposition to this aspect of Defendants' Motion, Plaintiff discusses at length the nature of the hearing waiver form; why it is that Defendant Stevenson even had a hearing waiver form with him; and why the Defendant did not produce a new hearing form when the first one was filled out in an inconsistent manner. Pl.'s Mem. of Law at p. 57; Pl.'s Aff. at pp. 15-19. Plaintiff's submissions are less clear on the issue of whether he actually refused to attend the hearing. *See id.* Nevertheless, and viewing Plaintiff's submissions in the light most favorable to him, the Court interprets his position as being that he did not in fact refuse to attend the hearing, but that Defendant Stevenson came to him predisposed to obtain that refusal, and ultimately decided not to produce Plaintiff at the hearing in spite of Plaintiff's wishes. Defendant Stevenson, for his part, affirmatively declares that Plaintiff refused to attend the second part of the hearing. This divergent testimony creates a question of fact that must be resolved at trial. Accordingly, I recommend that Plaintiff's due process claim be limited to the allegation that Defendant Stevenson deprived him of his right to be present at his disciplinary hearing and, as limited, that this claim proceed to trial.

*5. Qualified Immunity*

Finally, Defendants Ali, Martuscello, and Stevenson are not entitled to qualified immunity at this stage of the proceeding because questions of fact persist regarding the objective reasonableness of their conduct. *See Thomas v. Roach*, 165 F. 3d 137, 143 (2d Cir. 1999).

## V.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 148) be **GRANTED IN PART AND DENIED IN PART**; and it is further

**RECOMMENDED**, that all claims against Defendants Law and Baldwin be **dismissed with prejudice**; and it is further

**RECOMMENDED**, that the claims against Defendants Ali and Martuscello under RLUIPA and the Eighth Amendment be **dismissed, on consent, and with prejudice**, but that the First Amendment claims against them remain for trial; and it is further

**RECOMMENDED**, that the due process claim against Defendant Stevenson remain for trial, but that such claim be limited to the allegation that Defendant Stevenson prohibited Plaintiff from attending his disciplinary hearing; and it is further

**RECOMMENDED** that the remaining Defendants' Motion for qualified immunity be denied at this time; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**IT IS SO ORDERED**.

Date:  August 10, 2018
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

*-33-*